# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Goad*, 2013 IL App (4th) 120604

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM G. GOAD, Defendant-Appellee.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. WILLIAM G. GOAD, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket Nos. 4-12-0604, 4-12-0605 cons. |
| Filed | April 30, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of two charges of unlawful possession of a hypodermic needle on the ground that the State unreasonably delayed filing the charges was reversed, since defendant's claim that he was "forced to stop his life" to deal with the charges did not amount to actual and substantial prejudice for purposes of defendant's motion. |
| Decision Under Review | Appeal from the Circuit Court of Livingston County, Nos. 11-CF-102, 11-CF-103; the Hon. Jennifer H. Bauknecht, Judge, presiding. |
| Judgment | Reversed; cause remanded. |

Counsel on
Appeal

Thomas J. Brown, State's Attorney, of Pontiac (Patrick Delfino, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael J. Pelletier and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellee.

Panel

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Knecht and Turner concurred in the judgment and opinion.

## OPINION

¶ 1   In January 2012, defendant, William G. Goad, filed separate motions to dismiss the State's charge of unlawful possession of a hypodermic needle (720 ILCS 635/1 (West 2008)) in two different cases contending that the State unreasonably delayed filing the charges. In April 2012, the trial court granted defendant's motions to dismiss, finding that defendant had suffered actual and substantial prejudice because of the State's preindictment delay.

¶ 2   The State appeals, arguing that the trial court erred by granting defendant's motion to dismiss on grounds of preindictment delay. We agree and reverse.

¶ 3                    I. BACKGROUND

¶ 4                  A. The State's Charges

¶ 5   In April 2011, the State charged defendant with two separate counts of unlawful possession of a hypodermic needle in violation of section 1 of the Hypodermic Syringes and Needles Act (Act) (720 ILCS 635/1 (West 2008)). Specifically, the State alleged that on October 1, 2009 (Livingston County case No. 11-CF-102), and November 22, 2009 (Livingston County case No. 11-CF-103), defendant possessed a hypodermic needle adapted for the subcutaneous injection of a controlled substance. The State considered each charge a Class 4 felony because defendant had a prior conviction for a violation of the Act in Livingston County case No. 08-CF-56. See 720 ILCS 635/4 (West 2008) (a second or succeeding violation of the Act is a Class 4 felony). The State's charges also advised that if convicted, defendant was eligible for an extended-term sentence of up to six years in prison because of his previous felony conviction for possession of a controlled substance in Livingston County case No. 09-CF-273.

¶ 6                          B. Defendant's Motions To Dismiss

¶ 7         In January 2012, defendant filed separate motions to dismiss the State's charges in case Nos. 11-CF-102 and 11-CF-103. The following facts were gleaned from defendant's separate motions, which, aside from the arrest date, were identical.

¶ 8         On October 1, 2009, police arrested defendant for possessing a hypodermic needle in violation of section 1 of the Act, a Class A misdemeanor. Defendant was later provided notice to appear in court. (Defendant did not identify the appearance date.)

¶ 9         On November 16, 2009, the State arraigned defendant on a charge of possession of a controlled substance in case No. 09-CF-273. On November 22, 2009, police arrested defendant for a second violation of section 1 of the Act. Defendant was issued another notice, requiring him to appear in court. (Defendant did not identify the appearance date.)

¶ 10         Defendant later complied with the notices by appearing at the respective date and time specified therein. However, upon his arrival at the courthouse, he "was advised by the State that no charges were being filed."

¶ 11         On September 9, 2010, defendant pleaded guilty in case No. 09-CF-273. During guilty-plea negotiations in that case, neither the State nor defendant mentioned the October and November 2009 arrests at issue. (The trial court sentenced defendant to one year in prison followed by a one-year mandatory supervised release (MSR) term.)

¶ 12         In April 2011, the State charged defendant in two separate filings with unlawful possession of a hypodermic needle based on his October and November 2009 arrests (case Nos. 11-CF-102 and 11-CF-103, respectively). On September 9, 2011, defendant had served his sentence in case No. 09-CF-273 and successfully complied with the conditions of his MSR.

¶ 13         In January 2012, defendant filed a motion to dismiss the State's charges in case Nos. 11-CF-102 and 11-CF-103, arguing that the State's "scheme of prosecution moving back in time *** resulted in substantial prejudice against [him] with no demonstration of reasonableness [for] the delay."

¶ 14                   C. The Evidence Presented at the March 2012 Hearing
                             on Defendant's Motion To Dismiss

¶ 15         At the March 2012 hearing on defendant's motion to dismiss, the following questioning took place:

       "[DEFENSE COUNSEL: Defendant], did *** both these cases begin in fairly close proximity to each other?

       [DEFENDANT:] Yeah. It was in October 2009 and November 2009. Three years ago.

       [DEFENSE COUNSEL:] That's when you were contacted by the police?

       [DEFENDANT:] Arrested by the *** police. Yes.

       [DEFENSE COUNSEL:] After the police did their investigation, did they give you a summons to appear in court?

[DEFENDANT:] Yes, they did. I got arrested; and I bonded out on a misdemeanor bond of about [$]120 ***; and I was [told] to come back to court *** the following month.

* * *

[DEFENSE COUNSEL:] You came to court?

[DEFENDANT:] I came to court.

[DEFENSE COUNSEL:] You looked for your name on a list?

[DEFENDANT:] I looked for my name on the list.

[DEFENSE COUNSEL:] Did you find your name?

[DEFENDANT:] I did not.

[DEFENSE COUNSEL:] Did you talk to someone from the State's Attorney's office or clerk's office?

[DEFENDANT:] Yes, I did.

[DEFENSE COUNSEL:] What did they tell you?

[DEFENDANT:] They told me that at this time they were not filing charges and if they decided to, I would be let known [*sic*] through the mail."

¶ 16        Defendant also explained that in September 2010 he pleaded guilty in case No. 09-CF-273 and was sentenced to one year in prison. A month after his release from prison, defendant received a letter informing him of the State's intent to charge him with two counts of unlawful possession of a hypodermic needle (case Nos. 11-CF-102 and 11-CF-103, respectively). Defendant noted that in September 2011, he was released six months early from his one-year MSR term in case No. 09-CF-273 because he had consistently complied with the obligations imposed. Defendant planned to move to Arizona and accept a job offer from a relative to perform landscaping labor but was prevented from doing so because of the pending charges in case Nos. 11-CF-102 and 11-CF-103. Defendant stated that he had lost some wages by appearing in court and was motivated to move to Arizona to accept the landscaping job.

¶ 17        Defendant argued that (1) he was prejudiced by being "forced to stop his life" to respond to charges filed in case Nos. 11-CF-102 and 11-CF-103 and (2) the State abused its prosecutorial discretion by not resolving the unlawful possession of a hypodermic needle charges when defendant negotiated his guilty plea in case No. 09-CF-273. The State responded that (1) defendant was required to show that the delay in filing charges prejudiced his case instead of inconvenienced his personal plans and (2) the charges in case Nos. 11-CF-102 and 11-CF-103 were filed well within the statute of limitations.

¶ 18                                    D. The Trial Court's Ruling

¶ 19        At an April 2012 hearing, the trial court granted defendant's motion to dismiss. In support of that determination, the court found that the "most important factor" was defendant's being "told at that time that no charges were being filed." The court then recounted defendant's argument that "had defendant known that these charges were being

filed, he may have not gone through with [the guilty plea] agreement [in case No. 09-CF-273] for a number of reasons." In this regard, the court noted as follows:

"At some point, a person needs to be allowed to move forward. Had the [d]efendant known these charges were out there, he could have dealt with the charges at the time. He was specifically told by the State and that is unrefuted that charges were not going to be filed. He relied on that indication from the *** State's Attorney's Office in making decisions in his life, decisions to accept a plea and go to DOC for one year, decisions to obtain certain employment and move forward, decisions to try to relocate to Arizona.

So *** based upon those factors, [the court] think[s] there has been actual and substantial prejudice to the [d]efendant."

¶ 20    This appeal followed.

¶ 21        II. THE TRIAL COURT'S DISMISSAL OF THE STATE'S CHARGES

¶ 22    The State appeals, arguing that the trial court erred by granting defendant's motion to dismiss on grounds of preindictment delay. We agree.

¶ 23            A. Preindictment Delay and the Standard of Review

¶ 24    In *People v. Lawson*, 67 Ill. 2d 449, 456, 367 N.E.2d 1244, 1247 (1977), the Supreme Court of Illinois held that a trial court's inherent authority to ensure a fair trial permits the court to dismiss an indictment when a defendant has been denied due process because of actual and substantial prejudice resulting from preindictment delay. See *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (the due-process clause of the fourteenth amendment protects defendants from oppressive preindictment delay).

¶ 25    A defendant's claim of a prejudicial preindictment delay is subject to the following two-part analysis:

" 'Where there has been a delay between an alleged crime and indictment or arrest or accusation, the defendant must come forward with a clear showing of actual *and* substantial prejudice. Mere assertion of inability to recall is insufficient. If the accused satisfies the trial court that he or she has been substantially prejudiced by the delay, then the burden shifts to the State to show the reasonableness, if not the necessity of the delay.' " (Emphasis in original.) *People v. Delgado*, 368 Ill. App. 3d 661, 663, 858 N.E.2d 603, 605 (2006) (quoting *Lawson*, 67 Ill. 2d at 459, 367 N.E.2d at 1248).

We review *de novo* a trial court's ruling on a motion to dismiss an indictment due to oppressive and unreasonable preindictment delay. *People v. Carini*, 357 Ill. App. 3d 103, 112-13, 827 N.E.2d 1015, 1024 (2005).

¶ 26                B. The State's Claim of Error

¶ 27    In this case, the State argues that the trial court erred by granting defendant's motion to dismiss the charges in case Nos.11-CF-102 and 11-CF-103 because defendant did not make a clear showing of actual *and* substantial prejudice as required under *Lawson*.

Defendant–arguing in his brief to this court that the court did not err by dismissing the State's charges–contends that he was substantially prejudiced by the State's preindictment delay because (1) the unlawful possession of a hypodermic needle charges disrupted his attempt to secure meaningful employment and hampered his rehabilitation progress, (2) the State's initial representation that it would not charge him with unlawful possession of hypodermic needles prohibited the later resolution of those charges in a comprehensive plea agreement, and (3) the State delayed charging him with unlawful possession of hypodermic needles until he had served his sentence in case No. 09-CF-273 to subvert the legislature's limit on consecutive sentences.

¶ 28    The State responds that preindictment delay violations are based on prejudice to a defendant's case, not the inconveniences to a defendant's personal life. The State also posits that defendant's remaining contentions regarding (1) resolution of the charges at issue during guilty-plea negotiations in case No. 09-CF-273 and (2) the State's supposed intent to effectively obtain consecutive sentences through preindictment delay are–at best–speculative.

¶ 29    Although we commend defendant for the positive steps he has taken after serving his sentence in case No. 09-CF-273, we agree with the State that in cases where a defendant claims prejudice due to preindictment delay, the prejudice contemplated by *Lawson* concerns *actual damage to a defendant's ability to obtain a fair trial* because of the State's unreasonable delay. See *People v. Holcomb*, 192 Ill. App. 3d 158, 168, 548 N.E.2d 613, 621 (1989) ("The prejudice required by *Lawson* and *Lovasco* to establish a fourteenth amendment claim, however, is a showing that a defendant was denied an opportunity of a fair trial, such as an impairment of defendant's ability to prepare a defense."). Here, defendant essentially claims (as he argued at his March 2012 hearing on his motion to dismiss) that he was prejudiced by being "forced to stop his life" to respond to charges filed approximately 18 months after the incidents in question. However, this amounts to an inconvenience, not the type of prejudice sufficient to shift the burden to the State to explain the reasonableness or necessity of the delay. Accordingly, we reject defendant's claim that disruptions to his attempts to secure meaningful employment and continue his rehabilitation constituted substantial prejudice that denied him his right to a fair trial.

¶ 30    As an aside, we note defendant's testimony at the March 2012 hearing on his motion to dismiss that although the State declined to charge him with unlawful possession of a hypodermic needle shortly after his arrests in October and November 2009, the State did not foreclose the possibility that charges would be filed at a future date. Thus, contrary to his claim in his motion to suppress that he "was advised by the State that no charges were being filed," defendant–by his own admission–was aware that charges could have been filed at a later date as occurred in this case. As a result, at the time of his guilty-plea negotiations in case No. 09-CF-273, defendant's counsel could have inquired about the status of any potential charges and, if warranted, sought to have those charges included in the guilty-plea agreement with the State. We note that such a course of action is routine in guilty-plea negotiations.

¶ 31    We also reject defendant's contention that *People v. Bredemeier*, 346 Ill. App. 3d 557, 805 N.E.2d 261 (2004), supports his claim that he suffered actual and substantial prejudice when the State delayed charging him with unlawful possession of hypodermic needles until

he had served his sentence in case No. 09-CF-273. In this regard, defendant asserts that the delay allowed the State to subvert the legislature's limit on consecutive sentences. We are unpersuaded.

¶ 32   In *Bredemeier*, 346 Ill. App. 3d at 562, 805 N.E.2d at 266, the appellate court affirmed the trial court's finding that the State's six-year delay denied the defendant his right to due process. The evidence presented in that case showed that (1) the State acknowledged it knew the defendant was in an Indiana prison when it filed the petition to revoke his Illinois probation, (2) the State admitted it could have extradited the defendant to Illinois but did not do so, and (3) the State ignored the defendant's numerous requests to be transported from Indiana to Illinois for a hearing on the State's revocation petition. *Id.* In so concluding, the appellate court noted that under the facts of that case, the State violated the defendant's due-process rights because the delay prevented the defendant from serving any imposed Illinois prison sentence concurrent to his Indiana prison sentence. *Id.*

¶ 33   Simply put, unlike the evidence presented in *Bredemeier*, defendant has failed to present any evidence that demonstrates actual or substantial prejudice. Instead, defendant's self-serving assertions demonstrate only the possibility of prejudice, which is insufficient. See *People v. DiBenedetto*, 93 Ill. App. 3d 483, 488, 417 N.E.2d 654, 657 (1981) ("The possibility of prejudice is not enough to shift the burden to the State to show the reasonableness, if not the necessity, of the [preindictment] delay.").

¶ 34   Accordingly, we conclude that defendant failed to show actual and substantial prejudice as a result of the State's preindictment delay. Therefore, we need not determine whether the State's delay was reasonable or necessary. See *People v. Holman*, 103 Ill. 2d 133, 157, 469 N.E.2d 119, 130-31 (1984) (citing *Lawson*, 67 Ill. 2d at 459-60, 367 N.E.2d at 1249) (in the absence of evidence showing actual or substantial prejudice, we need not inquire into the motives of the State's actions).

¶ 35                                             III. CONCLUSION

¶ 36   For the reasons stated, we reverse the trial court's dismissal and remand for further proceedings.

¶ 37   Reversed; cause remanded.